UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                                          Case No. 12-CR-190

KAMEL M. KHATIB,

        Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On September 11, 2012, a Grand Jury sitting in this district returned a single-count Indictment charging Defendant Kamel M. Khatib with willfully receiving four AK-74 firearms while he was under Indictment for a felony in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2). The case was originally set for trial on November 19, 2012. On October 12, 2012, the court granted Khatib's request for an adjournment to allow more time for counsel to challenge the constitutionality of the statute he was charged with violating and otherwise prepare his defense. Trial was rescheduled for January 7, 2013.

Khatib thereafter filed a motion to dismiss the indictment on the grounds that it violated his right to bear arms under the Second Amendment and to due process under the Fifth. The court denied his motion on December 26, 2012. On January 3, 2013, counsel moved to withdraw as Khatib's attorney, citing a breakdown in communication culminating in Khatib's instructions to counsel that he was "fired." (ECF No. 37.) The court granted the motion and appointed new counsel. Trial was rescheduled for April 16, 2013.

On March 22, 2013, the government moved for a competency determination based on the number and nature of the pro se pleadings and motions Khatib had filed with the court. Counsel for Khatib agreed there were reasons to question Khatib's competency to proceed, and the court therefore ordered a competency evaluation by Dr. Kevin Miller, a Green Bay psychologist. Dr. Miller conducted an examination and issued a report in which he concluded that Khatib was currently incompetent but was likely to regain his competency with treatment. The court thereafter committed Khatib to the custody of the Attorney General pursuant to 18 U.S.C. § 4241(d) for treatment in a suitable facility.

On December 4, 2013, the court received a report indicating that Khatib had regained his competency. Upon his return to court, a hearing was held at which he was found competent to stand trial. Trial was thereafter set for January 27, 2014. On January 24, 2014, Khatib waived his right to a jury, and with the agreement of the government, the case was tried to the court on January 27, 2014. At the close of the evidence, a briefing schedule was set. Having now considered the briefs of the parties, and based on the evidence presented at trial, the court hereby finds Kamel M. Khatib guilty of willfully receiving a firearm while under indictment for a felony in violation of 18 U.S.C. §§ 922(n) and 924(a)(1)(D). What follows constitutes the court's findings of fact and conclusions of law.

As noted above, Khatib was charged with receiving a firearm while under indictment for a felony. In order to be found guilty of this offense, the government was required to prove the following elements beyond a reasonable doubt:

1. The defendant willfully received a firearm; and

2. At the time of the charged act, the defendant was under an Indictment or Information for a crime punishable by more than one year; and

3. The firearm had been shipped or transported in interstate or foreign commerce.

The evidence established without dispute that Khatib received four AK-74 semi-automatic assault rifles on August 28, 2012, which had previously been shipped in interstate commerce. Khatib had arranged to purchase the firearms from an undercover agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) at a meeting four days earlier on August 24. The government offered video and audio recordings of both meetings and audio recordings of several telephone conversations that had been conducted with Khatib as well.

There was also no dispute that at the time Khatib agreed to purchase, and then received, the firearms, he knew he had been bound over for trial and two separate informations had been issued by the District Attorney of Outagamie County, Wisconsin, charging him with six separate felonies. The charges included one count of possession with intent to deliver THC, physical abuse of a child, aggravated battery and three counts of felony bailjumping. (Exs. 1 and 5.) Although an information is not the same as an indictment, the statute defines the term "indictment" to include "an indictment or information in any court under which a crime punishable by imprisonment for a term exceeding one year may be prosecuted." 18 U.S.C. § 921(a)(14). Thus the sole dispute between the parties was whether Khatib had the requisite state of mind at the time he received the firearms for a finding of guilt.

Prior to trial, the court had suggested that Khatib might have a due process challenge to the charge under *Lambert v. California*, 355 U.S. 224 (1958), if the statute did not require actual knowledge that he was a prohibited person by virtue of simply being bound over for a felony. *See*

3

*also United States v. Wilson*, 159 F.3d 280, 293 (7th Cir. 1980) (Posner, J. dissenting) ("It is wrong to convict a person of a crime if he had no reason to believe that the act for which he was convicted was a crime, or even that it was wrongful."). As the government has pointed out, however, the statute under which Khatib is charged requires that he acted willfully. Willfully has been defined by the Supreme Court to mean that "the defendant acted with knowledge that his conduct was unlawful." *Bryan v. United States*, 524 U.S. 184, 192 (1998) (internal quotations omitted); *Dixon v. United States*, 548 U.S. 1, 5 (2006) ("[T]he term 'willfully' in § 924(a)(1)(D) requires a defendant to have acted with knowledge that his conduct was unlawful."). Although the statute does not require that the defendant actually know that he was a prohibited person under federal firearms law, the requirement that he must know that his conduct is unlawful removes the court's concerns over the constitutionality of the statute as applied in this case. Based on the evidence presented at trial, the court finds beyond a reasonable doubt that Khatib's receipt of the firearms was willful.

In both of his state cases, Khatib was released on bail. He signed bail forms in both cases that expressly advised him that "federal law provides penalties for, and you may be prohibited from possessing, transporting, shipping, receiving or purchasing a firearm, including but not limited to, a rifle, shotgun, pistol, revolver, or ammunition, pursuant to 18 U.S.C. § 922(g)(8)-(9)." (Exs. 4, 8.) In addition, the bail form in the assault case included as a condition that he could not use or possess dangerous weapons. (Ex. 8.) Khatib notes that the federal firearms warning does not mention 18 U.S.C. § 922(n), which is the provision he has been charged with violating, and claims that he thought the dangerous weapon prohibition was not in effect when his assault case was on appeal. The instant offense occurred during that appeal.

4

The federal warnings should have at least put Khatib on notice that he might be under a federal firearm prohibition. Indeed, Khatib claimed he was represented at the time by one of the top experts in firearm law. He also offered no reason to think that the "no dangerous weapons" condition of his bond in the assault case was not still in effect. This evidence at least suggests that Khatib knew or should have known that he was not allowed to possess firearms. But even aside from information on the bail forms themselves, it is clear from all of the evidence that Khatib knew his conduct in trying to purchase assault rifles from the undercover ATF agent was unlawful.

Khatib had let a person working as a confidential informant (CI) for the Wisconsin Department of Justice Division of Criminal Investigation know that he was interested in buying a large number of assault rifles, but not from a licensed firearms dealer. In a recorded telephone call between Khatib and the CI, Khatib confirmed that he wanted to buy 20 "45s," 20 "9mms" 20 "AK-74s" and maybe 10 regular "47s." The CI told Khatib he knew someone who could get him what he wanted and agreed to have his source call Khatib. ATF Special Agent Loren Common, posing as a gun dealer from Milwaukee who went by the name of L.C., then called Khatib and arranged to meet with him at a Starbucks parking lot off the highway in Appleton on August 24, 2012.

In the course of his meeting with L.C., Khatib instructed L.C. to call him "A." and confirmed the numbers and kinds of firearms he had mentioned over the phone. He indicated it would not matter whether they were "clean" or "dirty." L.C. explained that he was in the business of selling guns and did not want to know whether Khatib was a felon, crazy or had felony charges pending. As long as he did not know that he was prohibited from possessing a gun, L.C. stated he was not doing anything illegal in just selling the guns. Khatib said he had a big order for both guns and ammunition, and was planning on selling it altogether to international buyers. He also planned to

makes sales in Brazil or other South American countries. Khatib explained that money was no problem because he had a lucrative drug business selling high grade marijuana and used Mexicans who were in the country illegally as runners. He said he planned to retire from the drug business and get into the gun selling business. Khatib said he was interested in opening a gun store, but suggested it would be a front for his more lucrative sales. He expected to make at least a thousand dollars on each gun sale so he would have enough to pay his lawyer and pay his bail in the event he was arrested. He also said he was interested in buying Rocket Propelled Grenades and boxes of grenades. He was interested in making money and didn't care how he did it. However, Khatib said he wanted to keep a distance from the "product" so he could not be charged with anything like conspiracy.

At the conclusion of their conversation, L.C agreed to bring four AK-74s for Khatib to try out to see if they met his needs. If he was pleased, they would arrange for more sales later. With that understanding, the meeting ended. Khatib later called and tried to reduce his order to two, but L.C. told him he already had the four he requested. On August 28, 2012, they arranged to meet at another parking lot for the delivery. After Khatib received he guns, he was immediately arrested.

The facts and circumstances of the case provide ample support for the government's contention that Khatib acted willfully when he received the firearms. He arranged clandestine meetings with a person he believed to be a gun dealer who sold "clean" and "dirty" guns to anyone with money, including "gang bangers." Neither Khatib nor the dealer used their real names. It was clear from his own words that Khatib knew what he was planning to do was illegal. He wanted to make enough money to be able to hire an attorney to bail himself out of jail if he was caught and hire an attorney. He spoke of buying off police in other countries and insulating himself from the

deal by involving someone else in the transaction. One of his partners to whom he intended to sell or give one of the firearms could not lawfully possess a firearm. In telephone conversations about the transaction, he referred to the guns he intended to buy by the code word "phones." Given the manner in which he met with L.C., the conversation they had, and the surrounding circumstances, Khatib's claim that he thought his receipt of the AK-74s was lawful is not credible. The court finds that his receipt of the weapons was willful as defined by the Supreme Court in *Bryan*.

Khatib argued that much of his conversation with L.C. was hyperbole. He was exaggerating his involvement in illegal activity and the number of guns he wanted to buy in order convince L.C. that he was an important customer. No doubt, some of Khatib's talk was exaggeration. But that does not convince the court that he was not acting willfully. Indeed, the very fact that he was dishonest with L.C. and tried to impress him with his criminal exploits indicates that he knew he was not dealing with a man that legally sold guns at a discount. He wanted L.C. to believe that he was as successful a criminal as anyone else with whom L.C. was likely to do business.

Khatib's claim that he was entrapped by law enforcement is likewise unconvincing. An entrapment defense contains two related elements: (1) government inducement of the crime; and (2) the defendant's lack of predisposition to engage in the crime. *Mathews v. United States*, 485 U.S. 58, 62–63 (1988). Here, the government did not induce Khatib to obtain firearms. It merely provided the occasion for him to accomplish a plan he already embarked on. He told the CI he wanted to buy a large number of firearms. It was only after receiving this information that ATF became involved. The suggestion that L.C.'s comments about legally selling firearms was improper government inducement is likewise unconvincing. L.C. was speaking to Khatib not as a

7

government agent but as an illegal gun dealer. Moreover, his statements made clear that he was attempting to avoid not the illegal conduct he was engaged in, but getting caught for it.

In sum, the court is convinced beyond a reasonable doubt that Kamel Khatib is guilty of willfully receiving firearms while under indictment for a felony. He stands convicted of that offense this 18th day of February, 2014. The court hereby orders a pre-sentence investigation and report. The clerk is directed to set this matter on the court's calendar for sentencing.

**SO ORDERED** this 18th day of February, 2014.

    s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court